IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MAHARAJI HEMINGWAY,           :
      Petitioner            :
    v.                              : Case No. 3:21-cv-217-KAP
BARRY SMITH, SUPERINTENDENT,  :
S.C.I. HOUTZDALE,             :
      Respondent            :

## Memorandum Order

Maharaji Hemingway filed a habeas corpus petition pursuant to 28 U.S.C.§ 2254 at ECF no. 3, with a supporting memorandum at ECF no. 4, challenging his 2012 conviction and the 17–34-year sentence imposed (on resentencing in June 2014 after a direct appeal) by the Court of Common Pleas of Clearfield County (Honorable Fredric Ammerman, P.J.) on him in Commonwealth v. Hemingway, CP-17-CR-43-2009 (C.P. Clearfield). The response is at ECF no. 13, with the record at ECF nos. 12 and 14. Because Hemingway has no meritorious claims, the petition is denied and no certificate of appealability is issued.

The claims

Following the presentment of an investigating grand jury, Hemingway and several other individuals were charged in 2008 with distributing controlled substances in Clearfield County between 2005 and 2007. The Court of Common Pleas initially appointed Philip Masorti, Esq., to represent Hemingway. Trial counsel was Lance Marshall, Esq. Trial was delayed by the Commonwealth's successful interlocutory appeal of one of Judge Ammerman's pretrial orders, see Commonwealth v. Hemingway, 13 A.3d 491 (Pa. Super.2011), allocatur denied sub nom. Commonwealth v. Styers, 24 A.3d 864 (Pa. 2011) and Commonwealth v. Gearhart, 27 A.3d 1014 (Pa. 2011). Hemingway and two co-defendants proceeded to trial in January 2012, a trial at which several accomplices testified against Hemingway. The jury found Hemingway guilty of six counts of delivery of a controlled substance, 35 P.S.§ 780-113(a) (30), one count of conspiracy to deliver a controlled substance, 18 Pa.C.S.§ 903(a) and 35 P.S.§ 780-113(a)(30), one count of criminal use of a communications facility, 18 Pa.C.S.§ 7512 (a), one count of dealing in proceeds of unlawful activity, 18 Pa.C.S.§ 5111(a)(1), one count of corrupt organizations, 18 Pa.C.S.§ 911(b)(3), and one count of conspiracy to commit corrupt organizations. 18 Pa.C.S.§ 911(b)(4).

Judge Ammerman sentenced Hemingway in May 2012 to an aggregate 17-26 years. Hemingway, represented by Marshall, pursued a direct appeal attacking the

convictions and the sentence, raising both sufficiency and weight of the evidence claims with the other claims of trial court error. The Pennsylvania Superior Court rejected Hemingway's challenges to the sufficiency and weight of the evidence but vacated the sentence as improper in light of Alleyne v. United States, 570 U.S. 99 (2013), and remanded for resentencing. Commonwealth v. Hemingway, 97 A.3d 814 (table, text at 2014 WL 10979955 (Pa. Super. February 25, 2014). Judge Ammerman resentenced Hemingway on June 18, 2014, to an aggregate 17-34 years. Hemingway, again represented by Marshall, pursued a second direct appeal, this time raising the claims that the trial court computed Hemingway's prior record incorrectly and been vindictive in sentencing Hemingway to a longer maximum sentence. The Superior Court rejected both challenges and affirmed the sentence. Commonwealth v. Hemingway, 134 A.3d 108 (table, text at 2015 WL 6508106 (Pa. Super. October 27, 2015).

Hemingway then filed a timely *pro se* petition and motion for appointment of counsel under Pennsylvania's Post Conviction Relief Act (PCRA), 42 Pa.C.S.§ 9541 *et seq*. Judge Ammerman appointed as counsel Beau Grove, Esq. After his review of the record, Grove moved to withdraw pursuant to Commonwealth v. Turner, 544 A.2d 927 (Pa.1988) and Commonwealth v. Finley, 550 A.2d 213 (Pa.1988), identifying two nonfrivolous claims: 1) that Marshall was ineffective counsel for not requesting an expert witness on witness identification and recall; and 2) that the trial court erred in not permitting Marshall to cross examine prosecution witness Brandon Kifer about potential favorable treatment on Kifer's arrest in 2012. Hemingway filed a *pro se* response raising two other claims: 1) that false evidence was used to convict him; and 2) that witness identification of Hemingway in the suggestive environment of a trial taking place seven years after the witnesses' alleged encounters with Hemingway was improper.

Judge Ammerman granted Grove leave to withdraw in November 2018 but did not dismiss the PCRA petition until January 2020. Meanwhile, Hemingway had filed a second *pro se* PCRA petition in February 2019 raising three claims that overlapped in part the previous ones: 1) counsel was ineffective for failing to challenge witness identification of Hemingway before the grand jury; 2) the Commonwealth knowingly used false testimony by Brandon Kifer; and 3) Marshall was ineffective for not seeking a charge under Commonwealth v. Kloiber, 106 A.2d 820 (Pa.1954), instructing the jury that witness identification of Hemingway should be received with caution. Judge Ammerman addressed the claims in his Rule 1925 opinion in support of dismissal of the PCRA petition, noting that Hemingway's first claim made no sense to him since neither Masorti nor Marshall appeared as counsel until after the *ex parte* investigative work of the grand jury had finished.

Hemingway pursued a *pro se* appeal to the Superior Court, raising three claims: 1) Marshall was ineffective for failing to move for acquittal based on the insufficiency of the evidence of identification at trial, 2) the Commonwealth knowingly used false testimony, and 3) the trial court erred in denying Hemingway the opportunity to cross-examine a witness about any expectation of favorable treatment in a pending criminal matter. The Superior Court rejected all three claims as defaulted because Hemingway's inadequate *pro se* presentation of them caused them to be waived. The Superior Court found Hemingway's first claim had not been raised in the original PCRA petition and no request had been made to amend the petition to include it as a *pro se* claim when Grove was granted leave to withdraw, and Hemingway's first mention of it in his response opposing Grove's no-merit letter was not sufficient to prevent waiver under Pennsylvania law. Hemingway's second and third claims had not been presented to the trial court as ineffectiveness claims but rather as substantive claims. Because the substantive claims could have been raised on direct appeal, under 42 Pa.C.S.§ 9544(b) they were waived. In a footnote the Superior Court commented that Hemingway's "scant attempts to couch these claims as involving the ineffective assistance of counsel within the argument section of his Brief do not transform them into cognizable PCRA claims where he did not present them in that form in his PCRA Petition." Commonwealth v. Hemingway, 262 A.3d 470 (table, text at 2021 WL 3465811 (Pa. Super. August 6, 2021).

Hemingway then filed his federal petition, presenting four claims. The first is a sufficiency of the evidence claim that was exhausted on direct appeal:

> The Commonwealth failed to prove the elements of the crime in which the Petitioner was accused. As a matter of fact and record the Commonwealth could not conclusively prove the Petitioner was connected to the crimes, materially or circumstantially. Furthermore, the Commonwealth met no elements of the offenses with conclusive proof thereof. Petition at Ground One ¶ 12(a).

In his Memorandum, Hemingway sums up his review of the evidence, and then tries to throw in an ineffectiveness claim not previously raised:

> It is clear from the record of the State proceedings, there was no physical evidence: no buy money, no DNA, no wire-taps, no controlled buys --nothing albeit the identification by witnesses whom in most instances were trying to sa[ve] themselves from a long prison term. No one can positively describe the Petitioner; no evidence points directly at the Petitioner; therefore the evidence was insufficient as a matter of law. WINSHIP, supra.
>
> If this Court is to agree with the Commonwealth that direct appeal counsel failed to develop the argument to specific elements, then it should concur that appellate counsel was indeed ineffective. Memorandum at 15-16.

The second claim (third in the Memorandum) is that the Commonwealth presented false testimony:

> The Commonwealth used a witness whom it knew would testify falsely. Even though the prosecutor knew the witness did not know the Petitioner from illicit drug deals, the prosecutor continued to question the witness knowing that the witness was testifying falsely. The issue was not harmless because the Petitioner's identity was crucial where no evidence connected the Petitioner to the crimes. Petition at Ground Two ¶ 12(a).

Hemingway identifies this witness in the Memorandum as Brian Kifer (Brandon is his first name in the record) and explains why Kifer's testimony is false at Memorandum 27-31. When Kifer testified to a purchase of cocaine from Hemingway, known to Kifer as "Bean" in 2006, the following exchange took place.

> Q: Now, this Bean, how long did you deal with him?
> A: Just this one time.
> Q: And I know it's been a period of time obviously. This is what, 2006?
> A: Yes.

Memorandum at 27. Upon hearing this, Hemingway told Marshall that he and Kifer had been cellmates in 2009. The matter was explored at sidebar, and the prosecutor stated that he personally did not know about any connection in 2009, but because of the potential for prejudice in having the jury hear evidence placing a defendant in prison he believed that someone may have instructed Kifer "not to talk about jail." Memorandum at 28. According to Hemingway that was confirmed the next day, from which Hemingway extrapolates a claim that the prosecution knowingly used false testimony because:

> It can be inferred from the record, the district attorney knew they could not positively identify the Petitioner because up until trial, no one could independently pick him from a photo array or accurately describe him. Memorandum at 30.

The third claim (second in the Memorandum) is that Marshall was ineffective in "failing to move for acquittal or arrest of judgment following the grand jury indictment and/or Commonwealth's case in chief, where the only identification of petitioner was made under suggestive circumstances." The facts in support are explained as:

> The Petitioner's due process rights were violated where no one was able to identify or describe the Petitioner prior to trial or at any pre-trial processes. The only identification of the Petitioner came at trial under suggestive circumstances, however, witnesses testified that they dealt with the Petitioner on a daily basis, which included sexual relationships. Petition at Ground Three ¶ 12(a).

In the Memorandum at 17-26, Hemingway reviews the various places in the record that witnesses identified him both in the grand jury proceedings and at trial, and finds them wanting. The inadequate pre-trial identification is relevant, Hemingway explains, because:

> In court identifications of one as the person connected to crime is more suggestive that those present at pretrial one-on-one confrontations. Consequently, where there is no pretrial identification[,] no Grand Jury identification, no identification whatsoever only compounds the injustice. During the trial the identifying witness knows the defendant is present and also knows where the defendant will be sitting. Prior to trial, such circumstances have not yet occurred. If someone cannot describe an individual even remotely accurate, the identification in the courtroom should be called into serious question. Memorandum at 22.

Finally, Hemingway claims the trial court denied him the opportunity to cross examine a Commonwealth witness about promises of or expectations of leniency:

> The trial court denied the Petitioner the opportunity to cross examine one of the Commonwealth's chief witnesses against the Petitioner regarding promises or consideration of his own sentencing not only in the case at bar but also in another case pending at the time of the Petitioner's trial. Petition at Ground Four ¶ 12(a).

Hemingway explains the claim in his Memorandum: Marshall was attempting to cross examine Kifer about very recent drug charges in Allegheny County in an effort to expose additional motivation for Kifer to testify falsely against Hemingway. The Commonwealth objected that the charges (which had not yet even proceeded to the preliminary hearing stage) came after the plea agreement in Hemingway's case and thus were not relevant. According to Hemingway, Judge Ammerman asked Marshall if he agreed the new charges were not "criminal [sic] falsi," Marshall agreed, and Judge Ammerman sustained the objection immediately thereafter. Memorandum at 33-34. Hemingway implies that Judge Ammerman's ruling was based on the erroneous conclusion that because a drug charge is not a *crimen falsi* it could not be relevant for other purposes such as the point Marshall was obviously trying to explore. Hemingway's Memorandum morphs the claim as he presented it in the Petition into an attempted claim of ineffectiveness, arguing:

> Defense counsel was ineffective by not objecting to the trial court's ruling and/or clarifying what counsel was attempting to uncover. Counsel had no reasonable reasons nor can one be made for abandoning his attempt to uncover bias or ulterior motives Mr. Kifer may had had for his change of testimony from the Grand Jury proceedings. In other words, counsel abandoned cross-examination to test his story or impeach credibility, or to establish Kifer's motive for testifying. Memorandum at 34.

5

The law

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996, 28 U.S.C.§ 2244 allows a federal court to issue a writ of habeas corpus to a person challenging a state court criminal conviction and sentence. Hemingway must establish that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.§ 2254(a); *see* Howell v. Superintendent Rockview SCI, 939 F.3d 260, 264 (3d Cir.2019).

AEDPA does not permit a federal court to review state trial or appellate proceedings *de novo*. As a preliminary matter, 28 U.S.C. § 2254(b)(1) and (2) require petitioners challenging state sentences to first exhaust their state court remedies or show that none exists. Exhaustion requires fair presentation of the same claim presented in habeas to the state court. Robinson v. Superintendent, SCI Somerset, 722 Fed.Appx. 309, 312 (3d Cir.2018). In Pennsylvania, exhaustion of a federal habeas claim requires that the claim be fairly presented at least to the Pennsylvania Superior Court. Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir.2004). Because state courts have the primary duty and initial opportunity to consider federal constitutional challenges to state convictions, Castille v. Peoples, 489 U.S. 346, 349 (1989), the petitioner must have "fairly presented to the state courts" the same factual context and legal arguments presented to federal court, id., 489 U.S. at 351. *See* Baldwin v. Reese, 541 U.S. 27, 33 (2004); Duncan v. Henry, 513 U.S. 364, 366 (1995) (*per curiam*). Just as in other legal contexts, whether a claim is the same claim requires presentation with a good amount of specificity: a claim that is only "implied" by the one actually made is a waived claim. *See e.g.* United States v. Savage, 970 F.3d 217, 273 n.61 (3d Cir. 2020)("Although Savage seems to imply that there was insufficient evidence to support the murder convictions as to the arson victims other than Marcella Coleman, his claim challenges only the District Court's jury instruction on transferred intent. Savage has therefore forfeited a sufficiency of the evidence claim.").

When the state court adjudicates a petitioner's claim on the merits, 28 U.S.C.§ 2254(d) requires a petitioner to show that the ruling:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The relevant ruling is that of the last state court to decide a petitioner's federal claim on the merits in a reasoned opinion. Wilson v. Sellers, 200 L. Ed. 2d 530, 138 S. Ct. 1188, 1192 (2018). In this case, that requires this court to determine whether the Superior Court's decisions on direct appeal and collateral attack are not unreasonable applications of clearly established law.

For challenges to questions of law or mixed questions of law and fact under subsection (d)(1), a legal principle is "clearly established" "as determined by the Supreme Court" within the meaning of this provision when it is embodied in a holding of the Supreme Court in a case that presents the same or a closely similar issue. Thaler v. Haynes, 559 U.S. 43, 47 (2010); Carey v. Musladin, 549 U.S. 70, 74 (2006); s*ee also* Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  To decide whether there was an "unreasonable application" of federal law, the habeas court must ask whether the state court unreasonably applied Supreme Court precedent, not whether it was "merely wrong." White v. Woodall, 572 U.S. 415, 419 (2014). An unreasonable application of law can be found only when the arguments or theories that supported or could have supported the state court's decision are so inconsistent with a prior holding of the Court that every fairminded jurist would agree that the state court ruling is wrong. *See* Harrington v. Richter, 562 U.S. 86, 102 (2011).

For challenges to determinations of fact under subsection (d)(2), a determination of the facts is "unreasonable" when the petitioner proves by clear and convincing evidence, 28 U.S.C.§ 2254(e)(1), that the conclusion drawn from the evidence by the state court is so improbable that it "blinks reality." *See* Miller-El v. Dretke, 545 U.S. 231, 266 (2005). Where reasonable minds might disagree, a federal habeas court cannot reject the state court's determination. *See* Rice v. Collins, 546 U.S. 333, 341–42 (2006).

These are deliberately demanding standards. Habeas corpus is a guard against extreme malfunctions in the state criminal justice system, not second bite at the apple or a substitute for ordinary error correction through appeal. A petitioner must show "that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, *supra*, 562 U.S. at 102-03.  As the Court of Appeals has put it, "AEDPA gives state courts the benefit of th[e] doubt." Brown v. Wenerowicz, 663 F.3d 619, 634 (3d Cir. 2011)(reversing the grant of habeas corpus on a Strickland v Washington claim where attorney error that resulted in the exclusion of an alibi witness was conceded, but the district court gave insufficient deference to the state courts' conclusion that the lack of that alibi witness testimony did not prejudice the defendant.)

When a claim is presented in a habeas petition that was not adjudicated on the merits by a state court, it is reviewed *de novo* if it was properly presented to the state courts. If it was not properly presented under state law and is or has been declared barred under an adequate state legal rule, it is procedurally defaulted. It cannot be considered unless the petitioner shows cause for which the state is responsible and prejudice, or that the failure to consider the claim would result in a fundamental miscarriage of justice. Gray v. Netherland, 518 U.S. 152, 161-62 (1996); Coleman v. Thompson, 501 U.S. 722, 750 (1991). The miscarriage of justice basis for overcoming default is synonymous with a credible showing of actual innocence. *See* McQuiggin v. Perkins, 569 U.S. 383 (2013).

Sufficiency of evidence claims are governed by the standard in Jackson v. Virginia, 443 U.S. 307, 319 (1979): "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Taking Jackson v. Virginia and AEDPA together, a federal court's review of a state court rejection of a sufficiency claim must be doubly deferential: so long as the state court reasonably applied the federal standard so that the finding of guilt did not "fall below the threshold of bare rationality," the conviction does not fail for insufficient evidence. Coleman v. Johnson, 566 U.S. 650, 656 (2012).

A petitioner claiming a violation of the Sixth Amendment's guarantee of the assistance of counsel must satisfy the two requirements of Strickland v. Washington, 466 U.S. 668 (1984). A petitioner must first show that counsel's performance "fell below an objective standard of reasonableness." 466 U.S. at 688. Strickland v. Washington presumes that counsel was effective, and explains why:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel's was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

466 U.S. at 689 (internal citations and quotations omitted). *See* Lewis v. Mazurkiewicz, 915 F.2d 106, 115 (3d Cir. 1990) ("[W]hether or not some other strategy would have ultimately proved more successful, counsel's advice was reasonable and must therefore be sustained.") It is "only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir.1997) (*quoting* United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989) ).

Strickland v. Washington's second prong requires a petitioner to show prejudice, that is, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. In making that determination, the habeas court must consider the strength of the evidence. Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir.1999). Taking Strickland and AEDPA together, a federal court's review of a state court rejection of an ineffectiveness claim must also be doubly deferential. Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

It offends due process for a conviction to rest on perjured evidence. A conviction must be set aside if the prosecution knew or should have known of the perjury and "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103 (1976); Drake v. Portuondo, 321 F.3d 338, 345 (2d Cir. 2003). Proof of contradiction or discrepancy in testimony does not prove perjury because of the many reasons testimony may be inconsistent. A state court's determinations that a witness did not commit perjury or that the government did not know nor should have known of it are factual determinations that a petitioner must prove were unreasonable to obtain a writ. Lambert v. Blackwell, 387 F.3d 210, 249 (3d Cir. 2004), *cert. denied*, 544 U.S. 1063 (2005).

Some meritorious claims or error under state law, where those claims touch only on state law, cannot be reviewed by a federal court because "federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991)(citation omitted). For instance, while some evidentiary rulings implicate federal constitutional concerns (examples are allowing redacted statements or hearsay statements that implicate the right to confrontation of witnesses), but garden variety relevancy and prejudice rulings do not. State court rulings governing the qualification or the questioning of witnesses that present federal constitutional claims are the exception and not the rule for the same reason that federal court rulings do not necessarily present constitutional issues. In Dowling v. United States, 493 U.S. 342, 352-53 (1990), for example, the petitioner was convicted of bank robbery after the jury heard testimony about an allegedly similar home invasion for which Dowling had been tried and acquitted. The Supreme Court rejected the argument that appellate review of Rule

9

404(b) rulings needed to be supplemented by additional Due Process Clause analysis because the Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Id.*, 493 U.S. at 352-53.

The record

I think the best place to start with the factual background necessary to understand this matter is the brief filed on direct appeal in which Hemingway's trial counsel presented the sufficiency of the evidence claim to the Pennsylvania Superior Court:

> In the present case, there are no physical facts that would support these verdicts. It is undisputed that [Hemingway] was never found in possession of any cocaine or other controlled substance. It is undisputed that [Hemingway] was never found in possession of any cellular telephone or other communication device. Furthermore, the Commonwealth presented no evidence that [Hemingway] was in possession of any money, let alone proceeds or property from the sale of controlled substances. In short, the Commonwealth's entire case rests upon the testimony of accomplices.

Petitioner's direct appeal Brief at 26, as cited by the Superior Court in Commonwealth v. Hemingway, *supra*, 2014 WL 10979955. The complete direct appeal Brief is available at 2013 WL 8282829, and as Marshall discussed at greater length in his Brief at 16-20:

> The facts of this case are in dispute. Nevertheless, the Commonwealth, as the verdict winner is entitled to these facts: Between the winter of 2005 until 2007, co-Defendant Michael Styers, along with his "second-in-command" Charles Gearhart were the leaders of a cocaine-distribution ring in Clearfield County. The source of the cocaine in Clearfield County was a black man from Philadelphia who was known as "Bean" or "Hodges." The Defendant, Maharaji Hemingway has been identified as "Bean."
>
> Specifically, the testimony from the witnesses included: Kristin Wilsoncroft testified "Bean" provided her with cocaine when she drove him to Philadelphia in May or June of 2005. (R. 93-98, 113). She identified Bean in-court. (R. 105). However, her in-court identification must be measured against her inability to describe his height. (R. 128). She is also a convicted thief. (R. 129-130). Kristin was also 'threatened' to be charged with criminal behavior by the Commonwealth. (R. 117). When Kristin Wilsoncroft had sex with the Defendant, she admitted she did not know his name. (R. 134).
>
> Tara Swatsworth, a/k/a Tara Osborn, also testified that "Bean" provided her and Jake Pittman with cocaine. (R. 146-150). There was an in-court identification of Maharaji Hemingway as "Bean" or "Hodge." (R. 157-158). Tara Swatsworth made approximately 20-30 phone calls to "Bean." (R. 162). However, she made

these phone calls after December 30th of 2006 and into part of 2007. (R. 184). Tara was certain as to the dates she was making contact with "Bean." (R. 185-186). These dates are important because she could not have been in telephone contact with Maharaji Hemingway as he was incarcerated during this time.

Richie Smeal is another individual who testified "Bean" gave him cocaine in Philadelphia. (R. 218-222). Richie Smeal identified "Bean" as Maharaji Hemingway in court. (R. 225). Rich Smeal has a prior "falsely incriminating another person" conviction. (R. 245). Richie Smeal also knew that he had to "help himself" and "the way it works" is he cooperates with the police in order to get a better deal. (R. 250). Richie Smeal also testified that he first met "Bean" in "[Walter Wilsoncroft's home... sometime between January of 2005 and April of 2005." (R. 252). This is important because Maharaji Hemingway was incarcerated at this time.

Ariane Brocious testified she received drugs from "Bean" on multiple occasions. (R. 290-295). Like Richie Smeal, Ariane Brocious testified she met "Bean" in early, i.e., January-April of 2005. (R. 335-336). As previously stated, Ariane Brocious could not have met Maharaji Hemingway in early 2005 as he was incarcerated at this time. She is also a convicted thief and forger. (R. 336).

Rick Wilkinson testified that one time he went to Philadelphia to buy cocaine from "Bean." (R. 372-375). Rick Wilkinson also provided the car that Michael Styers went to Philadelphia to meet "Bean." This car was also the one used during "the Mann Road incident." (R. 376-380). Charles Gearhart told Rick Wilkinson that the cocaine from "the Mann Road incident"2 came from Bean. (R. 390). Rick Wilkinson identified "Bean" as Maharaji Hemingway in court. (R. 402-403). Of course, Rick Wilkinson only saw this "Bean" one time, for ten minutes, in the summer of 2005, in Philadelphia, and he was under the influence of cocaine at the time. (R. 414, 417) Rick Wilkinson also had "several" sources of cocaine. (R. 416). Rick Wilkinson is both an accomplice and received a "good deal" after reading the information that was given to him. (R. 422-423).

Jacob Pittman described obtaining cocaine from Maharaji Hemingway, a/k/a "Hodge" at his home. (R. 465-467, 478-479). Jacob Pittman "cooperated" after reading the discovery in this case. (R. 484-485, 488-496). Jacob Pittman is also a convicted forger. (R. 497).

Joseph Hunter testified that "Bean" sold 21 ounces of cocaine in a parking lot of a North Philadelphia Holiday Inn. (R. 578-587). Joseph Hunter testified he remember[ed] this man "Bean" as a man who sold him a gram of cocaine at Walt Wilsoncroft's home. (R. 587). Like the other witnesses, Joseph Hunter testified that he met "Bean" in early, i.e., January, February, March of 2005. (R. 605). As previously discussed, Maharaji Hemingway was incarcerated in early 2005. Joseph Hunter is also a convicted thief. (R. 609).

Brandon Kifer also testified that he received an ounce of cocaine from "Bean" in Philadelphia to sell in Clearfield. (R. 632-636). Brandon would later change his testimony to a "half ounce." (R. 665). Brandon Kifer was using drugs "every day" in the summer of 2006. (R. 672). Brandon Kifer has prior convictions for Bad Checks and Burglary (R. 651-652).

There is no video surveillance of the Defendant. (R. 45) There is no recorded telephone conversation of the Defendant. (R. 46). The Defendant was never found in any possession of cocaine or cocaine paraphernalia. (R. 46). The Defendant was not found in possession of an owe sheet. (R. 47). The Defendant was not found in possession of a cell phone. (R. 49). No phone number was ever found in connection with the Defendant. (R. 47). There are no telephone records between the Defendant and anyone else involved in this case. (R. 49). There are no text messages between the Defendant and anyone else. (R. 49).

2013 WL 8282829 *16-*21. Marshall conceded, as he had to, that accomplice testimony is sufficient to sustain a conviction under Pennsylvania law. As Judge Ammerman and the Superior Court observed, there was plenty of that:

> Appellant drastically understates the evidence against him in this case. Appellant's convictions were not based solely upon the uncorroborated testimony of a single coconspirator or accomplice. At least ten witnesses testified regarding Appellant's drug distribution activity during his trial. [citing the trial court opinion at 3.] Although there was no corroborative physical evidence presented by the Commonwealth, the witnesses' testimonies were corroborative of each other. Accordingly, his claim that the evidence was not sufficient to sustain his convictions is meritless. 2014 WL 10979955 at *5.

The Pennsylvania cases cited by the Superior Court, Commonwealth v. Spencer, 639 A.2d 820 (Pa. Super. 1994); Commonwealth v. Goldblum, 447 A.2d 234 (Pa. 1982); and Commonwealth v. Cristina, 391 A.2d 1307 (Pa. 1978), are consistent with the century-old precedent applying the federal rule that uncorroborated accomplice testimony may constitutionally provide a basis for a criminal conviction. *See* United States v. Smith, 317 Fed.Appx. 132, 134–35 (3d Cir. 2008), *citing* United States v. De Larosa, 450 F.2d 1057 (3d Cir.1971) and, ultimately, Caminetti v. United States, 242 U.S. 470, 495 (1917)). The rejection of the sufficiency claim by the state courts was neither contrary to nor an unreasonable application of federal law as established by the Supreme Court.

Hemingway's other claims, according to the Superior Court, were defaulted. Hemingway makes no attempt to argue that the defaults was not pursuant to an adequate and independent state court rule, he cannot show cause that would excuse the default because the defaults were made at a stage in the proceedings that Hemingway

and not appointed counsel bore responsibility for, and he has no colorable claim of actual innocence.

But if Hemingway's three other claims were not defaulted and were reviewed *de novo*, they would still have to be rejected. Hemingway's "lack of identification" claim is just a second argument that the evidence was insufficient to support a conviction, and like Hemingway's principal argument ignores the actual trial. Claiming that witness identifications should not be counted because of the lapse of time between the events testified to and the time of trial is an admission that the identifications exist.

What Hemingway called Kifer's perjury or false evidence claim, and any ineffectiveness claim he attempts to base on Kifer's alleged perjury or false evidence, is meritless because there is nothing that can be characterized as perjury. Marshall explored the information given to him by Hemingway at trial that indicated that Kifer's answer "just this one time" to the question "how long did you deal with him" was subject to impeachment. In the absence of some evidence that "deal with him" meant and was understood by Kifer to mean "have any other contact with him" instead of "did you buy drugs from him any other time," Kifer's answer was not false.  The reason the Kifer did not respond to the question by volunteering that he and Hemingway had subsequently also been cellmates was discussed at sidebar. Picking out an incomplete answer from the transcript that was addressed at a routine sidebar and presenting it for the first time in habeas as a constitutional error is unconvincing regardless of the standard of review.

The same can be said of the other claim based on Brandon Kifer's testimony. First, Hemingway obviously thinks that because Judge Ammerman ruled immediately after asking about *crimen falsi* that Judge Ammerman must have erroneously based his ruling on that ground. But judges, like other people, ask questions that do not necessarily relate to their next statements, and they do not always speak in complete paragraphs. Judge Ammerman could very well have been thinking, after pondering the relevance of additional evidence that Kifer had a motive to cooperate against Hemingway, that the evidence was cumulative and of marginal value. That is one reason it is up to counsel to make a contemporaneous objection and to specifically explain the basis for the objection: Marshall's lack of specific objection at trial (or a claim on direct appeal) that Judge Ammerman was wrong in 2012 does not give Hemingway an opportunity a decade later to claim that Judge Ammerman must have been wrong based on Hemingway's supposition as to why Judge Ammerman ruled.

Second, supposing Judge Ammerman to have made an erroneous decision, it is settled that state court evidentiary rulings that balance relevance against prejudice almost never rise to the level of constitutional claims. *See* <u>Estelle v. McGuire</u>, *supra*, 502 U.S. at 72 ("Nor do our habeas powers allow us to reverse McGuire's conviction based on a belief that the trial judge incorrectly interpreted the California Evidence Code in ruling

that the prior injury evidence was admissible as bad acts evidence in this case. See Cal.Evid.Code Ann. § 1101(b) (West 1988). The only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." (citation omitted)). There is no reasonable claim that the exclusion of additional impeachment evidence "infected" Hemingway's trial in any way.

Third, Hemingway's attempt to have that episode do double duty as an ineffectiveness claim is meritless. To prove that Marshall was ineffective Hemingway would have had to have shown (in the state court because he does not get the chance to make a record here as to a point not developed in the state court) that Ammerman erred, and that Marshall not only erred in not making it a point of argument on direct appeal but had no reasonable basis for not making an objection. But Marshall could easily have concluded that he had already adequately cross examined Kifer for motive and was not willing to waste time arguing the point with the trial judge, and that it was a point not worth raising in the direct appeal because appellate courts generally regard the length of a list of errors as inversely proportionate to its merit.

The petition is denied. Because no substantial showing of any constitutional violation has been shown, no certificate of appealability is issued. The Clerk shall mark this matter closed.

DATE: November 6, 2023

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel of record and by U.S. Mail to:

Maharaji Hemingway KP-0135
S.C.I. Houtzdale
P.O. Box 1000
209 Institution Drive
Houtzdale, PA 16698-1000